**\*NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

——————————————————
|   |   |
|---|---|
| DAN A. DRUZ, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| VALERIE NOTO, NEW JERSEY | : |
| DEPARTMENT OF LAW AND PUBLIC | : |
| SAFETY, JOHN DOE 1-5, and JANE | : |
| DOE 1-5, | : |
| | : |
| Defendants. | : |

Civil Action No.: 09-5040 (FLW)

**OPINION**

——————————————————

**WOLFSON, United States District Judge**,

This matter comes before the Court on a Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), brought by defendants Deputy Attorney General Valerie Noto ("Noto" or "DAG Noto") and the New Jersey Department of Law and Public Safety ("NJDLPS") (collectively "Defendants"). The allegations giving rise to the instant Complaint stem from a criminal prosecution of Plaintiff, Dan A. Druz ("Plaintiff" or "Druz") in 1992 (in which Plaintiff entered Pre-Trial Intervention ("PTI")) and an ethics proceeding in 1997 based on that prosecution (in which Plaintiff was fully exonerated of the ethics charge). Druz, an attorney, is proceeding pro se here, and asserts malicious prosecution and conspiracy claims under state common law and the Civil Rights Act, 42 U.S.C. § 1983, as well as a claim of wrongful infliction of emotional distress. For the reasons stated below, Defendant's Motion to Dismiss is GRANTED and Plaintiff's Complaint is DISMISSED with prejudice.

**FACTS**

The following version of events assumes Plaintiff's allegations in the Complaint to be true because Defendants move pursuant to Fed. Civ. R. P. 12(b)(6). The Court will recount only those facts relevant to this Motion.

Plaintiff is a New Jersey attorney, (Compl. ¶ 17), and was the Senior Vice-President and branch office manager of Morgan Stanley's ("MS") Princeton branch from 1982 to 1987. (Compl. ¶ 10). In 1985, Plaintiff was appointed by MS to be the financial consultant for the New Jersey School Boards Association Insurance Group ("NJSBIG") account. (Compl. ¶ 10). Plaintiff's employment contract with MS required that "all parties arbitrate any controversies arising from Plaintiff's employment." (Compl. ¶ 28). In 1987, a dispute arose between MS, NJSBIG, and Plaintiff over the performance of NJSBIG's investment portfolio.[1] (Compl. ¶ 11). NJSBIG sued Plaintiff in federal court in 1988. (Compl. ¶ 11); <u>N.J. Sch. Bds. Ass'n Ins. Group v. Dean Witter Reynolds, Inc.</u>, 111 Fed. Appx. 141 (3d Cir. 2004).

Apparently, as a result of this dispute, a grand jury investigation was commenced against Plaintiff in 1992, during which MS provided "hundreds of pages of altered, forged, fabricated and otherwise misleading documents to the prosecutor, the fraudulent nature of which were clear on their face." (Compl. ¶ 12). Among these documents were two internal memos known as "Weekly Account Number Change Record (WANCR) form[s]," which were "critical to, and the '<u>sole focus</u>' of" the criminal prosecution. (Compl. ¶ 13) (emphasis in original). Plaintiff denied signing the WANCR forms. (<u>Id.</u>) Plaintiff alleges that "it was clear to the naked eye" that the forms had not been signed by him, but rather by his assistant branch manager, the "star witness

---

[1] The nature of this dispute was not discussed in detail in the Complaint.

against Plaintiff."[2]  (Compl. ¶ 14).

DAG Noto did not investigate whether the WANCR forms were forged, but continued to investigate Plaintiff.  (Compl. ¶ 15).  Plaintiff was subsequently indicted on March 31, 1992.[3]  (Compl. ¶ 16).  DAG Noto immediately informed New Jersey Office of Attorney Ethics ("NJOAE") of Plaintiff's indictment.  (Compl. ¶ 18).

In June of 1992, Plaintiff commissioned a report from a handwriting expert, who opined that the former assistant branch manager, who was the star witness against Plaintiff, had actually forged Plaintiff's signature to the WANCR forms.  (Compl. ¶ 19).  Also in June of 1992, "a new witness came forward, unsolicited, and informed Plaintiff that members of the prosecutor's [Noto] family were long time friends of the star witness against Plaintiff."  (Compl. ¶ 20).  Plaintiff informed the Attorney General of this conflict, in writing, in August of 1992.  (Compl. ¶ 21).  DAG Noto was replaced by another prosecutor in "mid-1993," who forwarded the WANCR forms to a Federal Bureau of Investigations ("FBI") crime lab for analysis.  (Compl. ¶ 21).  The FBI agreed with Plaintiff's handwriting expert that the WANCR forms were forged by the State's star witness.  (Compl. ¶ 21).

On May 14, 1993, Plaintiff requested the names of the two individuals who allegedly possessed information regarding MS company procedures related to the WANCR forms which

---

[2] The name of the "star witness" does not appear in the Complaint, however, Plaintiff identifies the witness in a certification attached to the Opposition to the instant motion. The identity of the witness is not necessary to the resolution of the instant motion, however, and the Court finds no reason to convert the instant motion to one for summary judgment so that it may consider matters outside the pleadings.  See Pryor v. NCAA, 288 F.3d 548, 559 (3d Cir. 2002) (noting that a court may exclude matters outside the pleadings and treat the motion as labeled).

[3] The nature of Plaintiff's indictment is not revealed in the Complaint.

would have exonerated him.  (Compl. ¶ 22).  Despite Plaintiff's requests, when MS finally produced the names to the State in January of 1994, the Attorney General did not divulge them to Plaintiff.  (Compl. ¶ 25).  Plaintiff did not learn of this "illicit nondisclosure of exculpatory information to him, until more than a decade later, in September, 2006, in a related civil proceeding brought by him against MS pursuant to an agreement to arbitrate all employment disputes."  (Compl. ¶ 26).  Plaintiff alleges that, because of this non-disclosure, he was forced to accept diversion into PTI in 1995.[4]  (Compl. ¶ 27).

In January 1997, the NJOAE presented ethics charges against Plaintiff based on his indictment.  (Compl. ¶ 33).  Following a "multi-year investigation by the [NJ]OAE", plenary hearings were held in September 2001.  (Compl. ¶¶ 34-35).  The NJOAE charges were based upon the identical events, documents and information presented to the grand jury in Plaintiff's criminal prosecution.  (Compl. ¶ 36).  All ethics charges against Plaintiff were dismissed on February 16, 2002.  (Id.)

Plaintiff filed an arbitration complaint against MS and its "co-conspirators," but to avoid possible interference with the criminal and ethics proceedings against Plaintiff, all civil actions were stayed until 2005.[5]  (Compl. ¶¶ 29, 38).  The arbitration was allowed to proceed in 2005 and ultimately resulted in an award to Plaintiff of $551,445.00 on April 4, 2007.  (Compl. ¶ 30).

_____

[4] Defendant's brief asserts that Plaintiff entered PTI in 1993 (Def. Br. 5).  It is not clear from Plaintiff's Complaint when he entered PTI (Compl. ¶¶ 25-27); Plaintiff's brief asserts that "[b]y 1995, the details of the PTI negotiations were completed" and that "[i]n 1995 . . . the criminal matter resolved."  (Pl. Br. 6).  Since this discrepancy does not affect the Court's analysis, it will adopt the later year.

[5] See N.J. Sch. Bds. Ass'n Ins. Group v. Dean Witter Reynolds, Inc., 111 Fed. Appx. 141 (3d Cir. 2004).

Plaintiff, however, was unable to join his former supervisor in the arbitration, (Compl. ¶ 38), and thus was "compelled to initiate a second arbitration in 2007" against his former supervisor.[6] (Compl. ¶ 39). Plaintiff alleges that Noto, represented by State counsel, testified at the second arbitration in 2009 that "she had been angry with him [Plaintiff] as to the presentation of his defense in her failed prosecution more than twenty years earlier, and further admitted that she continues to be resentful towards him to this day."[7] (Compl ¶ 40).

Plaintiff filed suit against Defendants on October 1, 2009. Plaintiff's Complaint alleges five counts: Count I: Malicious Prosecution - Tort, (Compl. ¶¶ 42-46), Count II: Malicious Prosecution - Civil Rights Violation, (Compl. ¶¶ 47-52), Count III: Conspiracy to Maliciously Prosecute Plaintiff, (Compl. ¶¶ 53-57), Count IV: Conspiracy to Deprive Plaintiff of his Civil Rights, (Compl. ¶¶ 58-62), and Count V: Wrongful Infliction of Emotional Distress. (Compl. ¶¶ 63-66).[8]

---

[6] The name of this supervisor does not appear in the Complaint.

[7] Plaintiff appears to be referencing both the 1992 criminal prosecution and the 1997 ethics proceeding.

[8] Although it is not entirely clear from the Complaint whether Plaintiff's claims are based on the 1992 criminal prosecution or the 1997 NJOAE proceeding, Plaintiff asserts in his brief that "[h]is claim is based upon Defendants' causing the ethics proceeding, in which Plaintiff was fully exonerated." (Pl. Br. 9) (emphasis in original). Accordingly, unless otherwise noted, this Court's analysis focuses on the 1997 ethics proceeding. Because the 1997 ethics proceeding was a civil, and not a criminal, proceeding, Plaintiff's complaint should be read as asserting a claim for malicious use of process. See Zebrowski v. Wells Fargo Bank, N.A., 657 F. Supp. 2d 511, 523 n. 17 (D.N.J. 2009) (citing LoBiondo v. Schwartz, 199 N.J. 62, 89-90 (2009) ("Malicious use of process is the civil equivalent of malicious prosecution"); see also Wyatt v. Keating, 130 Fed. Appx. 511, 516 n. 5 (3d Cir. 2005) (interpreting a malicious prosecution claim as a malicious use of process claim because it dealt with a civil, not a criminal, matter); Hassoun v. Cimmino, 126 F. Supp. 2d 353, 362 n. 9 (D.N.J. 2000) (same).

## STANDARD OF REVIEW

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). In Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 1968 (quoting Conley, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 1965. As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating … a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 127 S.Ct. at 1965).

In affirming that Twombly standards apply to all motions to dismiss, the Supreme Court recently explained the principles. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

6

"Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 129 S. Ct. at 1950.  Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id.  Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  Fowler, 578 F.3d at 211.

## DISCUSSION

Defendants argue that (1) Plaintiff's federal claims against the State Defendants should be dismissed because they are entitled to Eleventh Amendment Immunity; (2) Plaintiff's 42 U.S.C. § 1983 claims should be dismissed because they are barred by the applicable statute of limitations; (3) the State Defendants are not subject to liability under section 1983 because they are not "persons" within the meaning of that statute;[9] (4) Plaintiff's claims against Noto are barred by prosecutorial immunity; and (5) Plaintiff's tort claims against the State Defendants should be dismissed because Plaintiff failed to comply with the notice provisions of the New Jersey Tort Claims Act ("NJTCA"), N.J. Stat. Ann. § 59:1-1, et seq.  (Def. Br.)  The Court will address each argument in turn.

---

[9] Defendants have moved for dismissal, with prejudice, of Plaintiff's claims against Defendants because they are not "persons" within the meaning of section 1983.  (Def. Br. 11-12). Plaintiff argues that Noto, sued in her personal capacity, is "[o]bviously . . . a person," and therefore is a "person" for purposes of section 1983.  (Pl. Br. 17).  Plaintiff cannot rely upon section 1983 to bring a damages action against any of the Defendants in their official capacity since it is well-settled that a state, a state agency, or a state official acting in an official capacity is not a "person" within the meaning of 42 U.S.C. § 1983.  Will v. Michigan Dep't. of State Police, 491 U.S. 58, 71 (1989).  Accordingly, with the exception of Noto in her personal capacity, all of Plaintiff's section 1983 claims, which appear to be set forth in Counts II and IV of the Complaint, are dismissed because Defendants are not "persons" within the meaning of section 1983.

**I.     Plaintiff's Claims Fail Because this Court Lacks Jurisdiction Over Defendants Who Enjoy Sovereign Immunity.**

Defendants have moved to dismiss, with prejudice, all of Plaintiff's claims because they are barred by sovereign immunity.  (Def. Br. 6).  The Eleventh Amendment of the United States Constitution provides: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  "While the [Eleventh] Amendment by its terms does not bar suits against a State by its own citizens, [the Supreme] Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State."  Edelman v. Jordan, 415 U.S. 651, 662-63 (1974), overruled on other grounds, Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989)).  "The breadth of state sovereign immunity protects not only states, but expands to protect entities and persons who can show that, even though the State is not the named defendant, 'the state is the real, substantial party in interest.'"  Bennett v. Atlantic City, 288 F. Supp. 2d 675, 679 (D.N.J. 2003) (quoting Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464 (1945), overruled on other grounds, Lapides v. Bd. of Regents, 535 U.S. 613 (2002)).  "[A] suit may be barred by the Eleventh Amendment even though a State is not named a party to the action, so long as the State is deemed to be the real party in interest."  Haybarger v. Lawrence County Adult Probation and Parole, 551 F.3d 193, 198 (3d Cir. 2008) (citing Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997)

In Fitchik v. New Jersey Transit Rail Operations, Inc., the Third Circuit held that the state is the real party-in-interest when "the judgment sought would expend itself on the public

treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting or to compel it to act." 873 F.2d 655, 659 (3d Cir. 1989) (quotations omitted). The Third Circuit set forth a three-factor test in <u>Fitchik</u> to determine whether the state is the real party in interest, and thus, entitled to sovereign immunity: (1) whether payment of a judgment resulting from the suit would come from the state treasury, (2) the status of the entity under state law, and (3) the entity's degree of autonomy. <u>Id.</u> at 659. All three factors are given "equal consideration, and how heavily each factor ultimately weighs in [the court's] analysis depends on the facts of the given case." <u>Cooper v. Southeastern Pennsylvania Transportation Authority</u>, 548 F.3d 296, 302 (3d Cir. 2008), <u>cert. denied</u>, 129 S. Ct. 2736 (2009).

"The party asserting immunity bears the burden of production and persuasion." <u>Id.</u> at 298 (<u>citing</u> <u>Febres v. Camden Bd. of Educ.</u>, 445 F.3d 227, 229 (3d Cir. 2006)). In support of their contention that sovereign immunity applies to bar Plaintiff's claims against the NJDLPS and DAG Noto, in her official capacity, Defendants cite to <u>Zahl v. N.J. Dep't of Law & Pub. Safety</u>, where the District of New Jersey conducted the <u>Fitchik</u> analysis and found the NJDLPS and its subdivisions to be arms of the state and entitled to sovereign immunity.[10] No. 06-3749, 2008 U.S. Dist. LEXIS 24022, *61-62 (D.N.J. Mar. 26, 2008). This Court agrees. <u>See</u> <u>Id.</u>; <u>Arnold v. New Jersey</u>, No. 03-399, 2007 U.S. Dist. LEXIS 33982, *8-9 (D.N.J. May 9, 2007) (finding the NJDLPS to be an agency of the State); N.J.S.A. 52:17B-1, -2. Moreover, Plaintiff's claims against Noto in her official capacity are claims against the NJDLPS itself. <u>Slinger v. New Jersey</u>,

---

[10] Plaintiff does not dispute that claims against the NJDLPS and DAG Noto in her official capacity are, in effect, claims against the State. Plaintiff instead argues that Defendants waived sovereign immunity when NJSBIG brought suit against Plaintiff in 1988. (Pl. Br. 3-4)

No. 09-1121, 2010 U.S. App. LEXIS 3642, *7 (3d Cir. Feb. 22, 2010) (citing Capogrosso v. Supreme Court of N.J., 588 F.3d 180, 185 (3d Cir. 2009)) (stating that Eleventh Amendment immunity "extends to employees of [an] agency [when they are] sued in their official capacities"); Beightler v. Office of the Essex County Prosecutor, 342 Fed. Appx. 829, 832 (3d Cir. 2009).

However, "[a] State's immunity from suit is not absolute." Lombardo v. Pennsylvania, 540 F.3d 190, 195 (3d Cir. 2008). "[T]here are only three narrowly circumscribed exceptions to Eleventh Amendment immunity: (1) abrogation by Act of Congress, (2) waiver by state consent to suit; and (3) suits against individual state officials for prospective relief to remedy an ongoing violation of federal law." M.A. ex rel. E.S. v. State-Operated Sch. Dist., 344 F.3d 335, 345 (3d Cir. N.J. 2003) (citing MCI Telecomms. Corp. v. Bell Atlantic-Pennsylvania Serv., 271 F.3d 491, 503 (3d Cir. 2001), cert. denied, 537 U.S. 941 (2002)). Plaintiff does not argue that Defendants are without entitlement to immunity based on Congressional abrogation. Indeed, it is "black-letter law that while Congress may abrogate a state's sovereign immunity under certain circumstances, it did not do so when enacting 42 U.S.C. § 1983." Pappas v. Township of Galloway, 565 F.Supp.2d 581, 586-87 (citing Will v. Michigan Dept. of State Police, 491 U.S. at 64). Nor is Plaintiff seeking prospective relief to remedy an ongoing violation of federal law. Rather, Plaintiff contends that Defendants have waived immunity.

Relying on Gunter v. Atl. Coast Line R.R., 200 U.S. 273 (1906), Plaintiff argues that Defendants waived sovereign immunity in 1988 when NJSBIG, a state instrumentality, brought suit in federal court against Plaintiff and MS's predecessor, Dean Witter Reynolds, Inc. in connection with Plaintiff's "handling of the [NJSBIG] securities account." (Pl. Br. 4); (Compl. ¶

11); (Pl. Br. 15-17).[11] Gunter, however, stands for the narrow proposition that a waiver of sovereign immunity will extend to ancillary proceedings in the same matter, but not to separate and independent actions regarding that matter.  200 U.S. at 292; see also Biomedical Patent Mgmt. Corp. v. California, 505 F.3d 1328, 1337 (Fed. Cir. 2007) (holding that a state did not waive sovereign immunity when it intervened in a past, related action); cf. Lapides v. Bd. of Regents, 535 U.S. 613, 620 (2002) (holding that a state waives sovereign immunity when it voluntarily removes an action to federal court because it is "the same action"); Vas-Cath, Inc. v. Curators of the Univ. of Mo., 473 F.3d 1376, 1378 (Fed. Cir. 2007) (holding that a state waives sovereign immunity when it initiates a patent action and cannot assert sovereign immunity in an appeal of that action because the appeal is "a later phase of a continuous proceeding"); New Hampshire v. Ramsey, 366 F.3d 1, 15-16 (1st Cir. 2004) (holding that a state waives sovereign immunity when it subjects itself to an administrative proceeding and an appeal to federal district court because it is "one continuous proceeding").  Plaintiff is correct that sovereign immunity is waived regarding the cause that the State has voluntarily submitted for judicial determination in federal court (here, Plaintiff's handling of the NJSBIG account), see Lapides v. Bd. of Regents, 535 U.S. 613, 619 (2002) (citing Gunter, 200 U.S. at 284), but is incorrect when he interprets this waiver to automatically extend to all suits between Plaintiff and New Jersey (and, consequently, Defendants) forever.  (Pl. Br. 16).

_____

[11] Plaintiff also argues – without citing any authority – that when Noto, represented by State-provided counsel, voluntarily testified against Plaintiff in his arbitration with MS, all Defendants "re-affirmed" the waiver of sovereign immunity.  (Pl. Br. 15-16).  Plaintiff, however, neither alleges that, by doing so, New Jersey has made a clear declaration that it intends to submit itself to this Court's jurisdiction, nor that New Jersey has voluntarily invoked this Court's jurisdiction by bringing suit.  See MCI Telecomm. Corp., 271 F.3d at 504.

The instant case is clearly a separate proceeding from the 1988 NJSBIG litigation.  That litigation concerned Plaintiff's "handling of the [NJSBIG] securities account."  (Pl. Br. 4); (Compl. ¶ 11).  This litigation concerns whether the 1997 NJOAE proceeding against Plaintiff was malicious.  (Pl. Br. 9).  The issues Plaintiff presents in this case are completely unrelated to the issues litigated in the NJSBIG litigation; nothing in that case turned on whether DAG Noto acted with legal malice or without probable cause when informing the NJOAE of the criminal indictment against Plaintiff.  Whether Plaintiff actually did mishandle the NJSBIG securities account is irrelevant.  Plaintiff himself even represented to the federal district court in the 1988 NJSBIG litigation  "that what he [was] seeking to arbitrate . . . is a separate and independent action for malicious prosecution."  N.J. Sch. Bds. Ass'n Ins. Group v. Dean Witter Reynolds, Inc., 111 Fed. Appx. 141, 142 (3d Cir. 2004) (emphasis added).  Accordingly, with the exception of Noto in her personal capacity, all Defendants enjoy sovereign immunity.

This Court finds that the instant case is a separate and independent action from the 1988 NJSBIG litigation.  Plaintiff fails to point to any litigation conduct (such as removal, appeal, or bringing suit) undertaken by Defendants that would enable this Court to determine that, to avoid "inconsistency and unfairness," Lapides, 535 U.S. at 622, Defendants must be found to have waived sovereign immunity in this case.  The instant case is not a later, continuous part of the 1988 NJSBIG litigation; it is not the same action.  Accordingly, with the exception of Noto in her personal capacity, all Defendants enjoy sovereign immunity.

II.   **Plaintiffs Claims Fail Because they are Barred by Witness/Grievant Immunity, Improper Pleading, the Statute of Limitations, and the NJTCA.**

Although sovereign immunity bars most of Plaintiff's Complaint, the remainder of the

12

claims against DAG Noto acting in her personal capacity, also fail.  In the interest of judicial thoroughness, this Court will now address Defendants' remaining arguments for dismissal as they relate not only to DAG Noto in her personal capacity but also the Defendants collectively.

      **A.**      **Plaintiff's Claims Against DAG Noto are Barred by Grievant/Witness Immunity**.

Defendants have moved for dismissal, with prejudice, of Plaintiff's claims against DAG Noto as barred by prosecutorial immunity, (Def. Br. 13), and because DAG Noto is "absolutely immune for her communication to the [NJ]OAE and for her testimony in the disciplinary process" pursuant to N.J. Court rule 1:20-7.  (Def. Br. 14, n. 2).   Plaintiff opposes Defendants' Motion to Dismiss, arguing that "[t]here is no litigation immunity for the tort of 'malicious [use of process].'" (Pl. Br. 18); see supra n. 8.  Plaintiff's argument is flawed for several reasons.

First, while Plaintiff is correct that "litigation privilege does not preclude liability for malicious use of process," Pactiv Corp. v. Perk-Up, Inc., No. 08-05072, 2009 U.S. Dist. LEXIS 72796, *20 (D.N.J. Aug. 18, 2009), the litigation privilege does apply to section 1983 claims. Loigman v. Twp. Comm., 185 N.J. 566, 584 (2006).  Consequently, even if the applicability of the litigation privilege were at issue in this case – which it is not – it still applies to Plaintiff's section 1983 claims.[12]

Second, Plaintiff confuses the litigation privilege with prosecutorial immunity; the litigation privilege is not the same thing as prosecutorial immunity.  See Loigman, 185 N.J. at 582 (describing the litigation privilege and comparing it to judicial, prosecutorial, and witness immunity).  "The [litigation] privilege shields 'any communication (1) made in judicial or

_____

[12] See supra n. 9.

quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.'" Id. at 585 (quoting Hawkins v. Harris, 141 N.J. 207, 216 (1995)).  Prosecutorial immunity, in contrast, shields prosecutors "to varying levels of official immunity," depending on which role the prosecutor is acting in.  Kulwicki v. Dawson, 969 F.2d 1454, 1463 (3d Cir. 1992) (describing absolute and qualified prosecutorial immunity, as well as the possibility that "there may be instances where a prosecutor's behavior falls completely outside the prosecutorial role" and thus is entitled to no immunity).

Third, even had Plaintiff correctly addressed the thrust of Defendants' attack on his claim, absolute prosecutorial immunity does not apply to Plaintiff's claim.[13]  The immunity at issue is neither prosecutorial immunity nor the litigation privilege, but rather, DAG Noto's immunity as a grievant/witness before the NJOAE because Plaintiff's "claim is based upon Defendants' causing the ethics proceeding."  (Pl. Br. 9; see Def. Br. 14 n. 2).  In In re Hearing on Immunity for Ethics Complainants, the New Jersey Supreme Court upheld a court rule that provided grievants and witnesses in ethics proceedings with "absolute[] immun[ity] from suit for testimony or

---

[13] "Absolute [prosecutorial] immunity attaches to all actions performed in a "quasi-judicial" role . . . [t]his includes activity taken while in court, such as the presentation of evidence or legal argument, as well as selected out-of-court behavior "intimately associated with the judicial phases" of litigation."  Kulwicki, 969 F.2d at 1463 (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976).  Neither side devotes any briefing toward whether DAG Noto is entitled to qualified prosecutorial immunity for informing the NJOAE of Plaintiff's indictment.  See, e.g., Odd v. Malone, 538 F.3d 202, 213-14 (3d Cir. 2008) (holding that, for the purposes of prosecutorial immunity, a "biweekly reporting requirement . . . is plainly administrative" and thus entitled to qualified immunity); N.J. Court Rules, R. 1:20-13(a)(2) (providing that the Director of the NJOAE may request prosecutors to report indictments against New Jersey attorneys to the NJOAE).  Because this Court finds for Defendants on other immunity-based grounds, it will not reach whether DAG Noto is entitled to qualified prosecutorial immunity.

communications given or made in connection with the . . . ethics proceeding" to protect and

promote the purposes of attorney ethics.  96 N.J. 669, 671, 677-79 (1984).  Specifically, N.J.

Court Rule 1:20-7(f) provides:

> Immunity of Grievants, Witnesses and Others.  Grievants in ethics matters . . . shall
> be absolutely immune from suit, whether legal or equitable in nature, for all
> communications, including testimony, only to the Office of Attorney Ethics, the
> Disciplinary Review Board, Disciplinary Oversight Committee, Ethics Committees,
> Fee Committees, their secretaries, special ethics masters and their lawfully appointed
> designees and staff.

N.J. Court Rules, R. 1:20-7.  As a grievant and witness before the NJOAE regarding Plaintiff's

indictment, Noto is entitled to immunity for any communications she made to the NJOAE.  See

In re Hearing on Immunity for Ethics Complainants, 96 N.J. at 671; see also Edelstein v.

Wilentz, 812 F.2d 128, 131 (3d Cir. 1987) (citing cases) ("The Constitution does not create a

fundamental right to pursue specific tort actions. States may create immunities which effectively

eliminate causes of action, subject only to the requirement that their action not be arbitrary or

irrational.").  Plaintiff has not challenged, as arbitrary or irrational, New Jersey's creation of

immunity for attorney ethics witnesses and grievants (and the consequent elimination of suits

against them regarding their communications to the NJOAE, review boards, etc.).[14]

Accordingly, DAG Noto is entitled to grievant and witness immunity for any

communications she made to the NJOAE, including informing the NJOAE of the 1997

indictment against Plaintiff, regardless of whether she made those communications in her

personal or official capacity.  N.J. Court Rules, R. 1:20-7.  Because Plaintiff's "claim is based

upon Defendants' causing the ethics proceeding,"  (Pl. Br. 9) (emphasis in original), Plaintiff's

---

[14] Even were this question before the Court, the Third Circuit has held that New Jersey's
immunity for attorney ethics witnesses and grievants is not irrational.  Edelstein, 812 F.2d at 133.

claims against DAG Noto, in both her personal and official capacity, are barred by

grievant/witness immunity.[15]

> **B.     Even if Defendants did not Enjoy Sovereign Immunity or Grievant/Witness Immunity (or Both), Plaintiff's Section 1983 Claims Fail Because they are Deficient and are Barred by the Statute of Limitations.**

It is clear from the Complaint that, as a matter of law, Plaintiff cannot succeed on his

section 1983 claims.[16]  Plaintiff has failed to (1) sufficiently allege the violation of a

constitutional provision, (2) allege a special grievance, and (3) to bring his claims within the

two-year statute of limitations.  As such, all of Plaintiff's section 1983 claims, which appear to

be pled in Counts II and IV, are dismissed.

> > **i.     Plaintiff's Section 1983 Malicious Use of Process Claim is Insufficient Because it Fails to Sufficiently Allege the Violation of a Constitutional Provision.**

Although Defendants have not challenged the sufficiency of Plaintiff's section 1983

claims, this Court will address <u>sua sponte</u> whether they are pled with sufficiency.  In the Third

Circuit, a claim for malicious use of process under section 1983 must (1) allege the violation of

---

[15] Common sense also dictates that Plaintiff clearly should not be able to complain that Noto reported his indictment to the NJOAE because Plaintiff was himself obligated to "promptly inform the Director of the Office of Attorney Ethics in writing of the charge."  N.J. Court Rules, R. 1:20-13(a)(1).

[16] A liberal reading of the Complaint suggests that Plaintiff may also be asserting Counts II and IV as common-law torts and not just as section 1983 claims.  <u>See</u> <u>supra</u> n. 9.   Because this Court (1) grants Defendants' Motion to Dismiss on multiple – comprehensive – grounds, (2) Defendants have only moved for dismissal of Plaintiff's section 1983 claims as barred by the statute of limitations, and (3) because this Court reads only Counts II and IV as section 1983 claims (the "common law tort" Counts I and III are mirror images of the "civil rights" Counts II and IV), this Court need not reach whether any other aspects of the Complaint are barred by applicable statutes of limitations.

16

a constitutional provision and (2) allege the elements of the common law tort.[17]  Wyatt, 130 Fed.

Appx. at 516.

Because section 1983 is "not itself a source of substantive rights," but merely provides

"a method for vindicating federal rights elsewhere conferred," Baker v. McCollan, 443 U.S.

137, 144 n. 3 (1979), "[t]he first step in any such claim is to identify the specific constitutional

right allegedly infringed."  Albright v. Oliver, 510 U.S. 266, 271 (1994), rehearing denied, 510

U.S. 1215 (1994) (quoting Graham v. Connor, 490 U.S. 386, 394 (1989)).  Plaintiff comes

closest to identifying a constitutional right that was infringed when he alleges that he "suffered

deprivation of liberty consistent with the concept of 'seizure' as a consequence of the legal

proceeding."[18]  (Compl. ¶ 51).  Reading the Complaint liberally, it appears that, by using this

specific language, Plaintiff is attempting to allege that his Fourth Amendment rights were

violated.  See Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007) (stating a fifth element –

identical in language used by Plaintiff – for section 1983 Fourth Amendment malicious

prosecution claims).

In Wyatt, the Third Circuit, interpreting a malicious prosecution claim regarding a civil

---

[17] "Under New Jersey law, malicious prosecution has four elements. Plaintiff must
establish that the defendant (1) instituted proceedings (2) without probable cause and (3) with
legal malice; and (4) the proceedings terminated in favor of the plaintiff."  Trabal v. Wells Fargo
Armored Serv. Corp., 269 F.3d 243, 248 (3d Cir. 2001) (citing Lightning Lube v. Witco Corp., 4
F.3d 1153, 1197 (3d Cir. 1993).  "Malicious use of process requires the plaintiff to prove the
civil counterpart to each of those elements, but adds a fifth requirement, namely, that the plaintiff
has suffered a special grievance caused by the institution of the underlying civil claim."
LoBiondo, 199 N.J. at 90 (citing Mayflower Indus. v. Thor Corp., 15 N.J. Super. 139, 152
(Ch.Div.1951), aff'd, 9 N.J. 605 (1952); see also Tsitsoulis v. Twp. of Denville, No. 07-4544,
2008 U.S. Dist. LEXIS 53741, *11-12 (D.N.J. July 15, 2008).

[18] Plaintiff's "claim is based upon Defendants' causing the ethics proceeding."  (Pl. Br. 9)
(emphasis in original).

matter as a malicious use of process claim, rejected "a Fourth Amendment right to be free from malicious prosecution."  130 Fed. Appx. at 516.  The court noted that, interpreting <u>Albright</u>, the Third Circuit has rejected "such a broad right to be free from prosecution without probable cause, instead requiring 'a deprivation of liberty accompanying the prosecution' in order to use the Fourth Amendment."  <u>Id.</u> (quoting <u>Gallo v. City of Philadelphia</u>, 161 F.3d 217, 222 (3d Cir. 1998).  Because there is no deprivation of liberty when a civil complaint is filed, the District of New Jersey has questioned "whether a [section] 1983 claim for malicious use of civil process may be sustained at all in the wake of <u>Albright</u>."  <u>Hassoun</u>, 126 F. Supp. 2d at 363 n. 13.  But, as in <u>Hassoun</u>, this is a question this Court need not resolve as Plaintiff's claims are barred by sovereign immunity and grievant/witness immunity.  <u>See</u> <u>supra</u> Sec. I & II.

Regardless of whether it is possible, Plaintiff has failed to allege a specific constitutional right that was infringed by Defendants.  Consequently, Plaintiff's section 1983 claims are dismissed as insufficient.

### ii. Plaintiff's Section 1983 Malicious Use of Process Claim is Insufficient Because it Fails to Allege a Special Grievance.

"Since there is no deprivation of liberty when a civil complaint is filed, 'the minimal impact of the commencement of civil litigation is insufficient for recovery without the additional showing of a special grievance.'"  <u>Component Hardware Group v. Trine Rolled Moulding Corp.</u>, No. 05-891, 2007 U.S. Dist. LEXIS 54900, *16-17 (D.N.J. July 27, 2007) (quoting <u>Klesh v. Coddington</u>, 295 N.J. Super. 51, 59 (Law Div. 1996), <u>cert. denied</u>, 147 N.J. 580 (1997)); <u>see</u> <u>supra</u> n. 17.  "A special grievance 'consists of an interference with one's liberty or property and includes events such as the filing of a bankruptcy petition, granting an

18

injunction, filing a lis pendens or wrongful interference with the possession or enjoyment of property.'" <u>Component Hardware Group</u>, 2007 U.S. Dist. LEXIS 54900 at *17 (quoting <u>Klesh</u>, 295 N.J. Super. at 59).

The Complaint does not allege what effect, beyond the assertion that it was a "deprivation . . . consistent with the concept of 'seizure,'" the 1997 NJOAE proceeding had on Plaintiff's possession or enjoyment of property. (Compl. ¶ 51); <u>see</u> N.J. Court Rules, R. 1:20-6(c)(2)(E)(iii) (providing for reprimand, censure, suspension or disbarment recommendations only <u>after</u> a hearing panel or special ethics master finds that there has been unethical conduct). Here, Plaintiff alleges only that the OAE presented charges against him and that following a multi-year investigation, a Special Master was appointed who, after conducting plenary hearings, issued a written decision dismissing all charges against Plaintiff, fully exonerating him. (Compl. ¶¶ 32 - 36). Other than the fact that the Plaintiff was forced to answer to the charges, he does not allege any adverse consequence as a result of the OAE proceeding. There are no allegations that Plaintiff's license was suspended during the proceeding or that Plaintiff was subject to any adverse consequences. The Complaint simply does not allege a special grievance that resulted "<u>directly</u> from [the] process issued in the proceeding that is said to have been malicious." <u>Component Hardware Group</u>, 2007 U.S. Dist. LEXIS 54900 at *18 (quoting <u>Venuto v. Carella</u>, 11 F.3d 385, 389 (N.J. 1993) (internal quotations omitted) (emphasis in original); <u>see also</u>  <u>Component Hardware Group</u>, 2007 U.S. Dist. LEXIS 54900 at *17 (quoting <u>Brien v. Lomazow</u>, 227 N.J. Super. 288, 304 (App. Div. 1988)) (holding that "[c]ounsel fees, the plaintiff's mental anguish or emotional distress, or 'alleged loss of reputation which could flow from the mere filing of any complaint' do not constitute a special

grievance.").

Consequently, Plaintiff's section 1983 claims are dismissed as insufficient because Plaintiff has failed to plead a special grievance.

### iii. Plaintiff's Section 1983 Claim is Barred by the Statute of Limitations.

Defendants have moved to dismiss, with prejudice, Plaintiff's section 1983 claims as barred by the statute of limitations. Defendants argue that Plaintiff's cause of action accrued at the end of his criminal prosecution in 1995, when he entered PTI, (Compl. ¶¶ 25-27); (Def. Ltr. Br. 3), but that Plaintiff did not file suit until October 1, 2009. (Def. Br. 5.) Plaintiff counters that the statute of limitation did not begin to run until all the elements of malicious use of process[19] were present. (Pl. Br. 13.) Plaintiff asserts, however, that he did not know, nor should he have known, that DAG Noto acted with legal malice in 1992 when she informed the NJOAE of Plaintiff's indictment, (Compl. ¶ 32), and that Plaintiff did not learn of DAG Noto's legal malice until she testified in the MS arbitration in 2009.[20] (Compl. ¶ 40.) Plaintiff argues that his claim that the 1997 NJOAE proceeding was malicious did not accrue until January 2009. (Pl. Br. 13-15).

"A section 1983 claim is characterized as a personal-injury claim and thus is governed by the applicable state's statute of limitations for personal-injury claims." Dique v. New Jersey

---

[19] This analysis assumes Plaintiff could plead the element of a special grievance. But see supra Sec. II.B.ii; N.J. Court Rules, R. 1:20-6(c)(2)(E)(iii).

[20] Plaintiff alleges that DAG Noto "denigrated Plaintiff, testifying that she had been angry with [Plaintiff] as to the presentation of his defense in her failed prosecution more than twenty years earlier, and further admitted that she continued to be resentful towards him to this day." (Compl. ¶ 40).

State Police, Nos. 05-1159, 08-2525, 2010 WL 1793907, * 2 (3d Cir. May 6, 2010).  "New

Jersey . . . mandates a two-year statute of limitations period for personal-injury torts."  Id.,

(citing N.J. Stat. Ann. § 2A:14-2).  "Thus, a section 1983 claim arising in New Jersey has a two-

year statute of limitations."  Id.   To the extent that it is not inconsistent with federal law, state

law "also governs the concomitant issue of whether a limitations period should be tolled."  Id. at

*3.  As the Third Circuit has recently noted

> Under New Jersey law, a statute of limitations can be tolled based
> upon equitable principles, including the discovery rule.  Freeeman v.
> State, 347 N.J. Super. 11, 788 A.2d 867, 878 (App.Div. 2002).  The
> discovery rule postpones a claim from accruing if a plaintiff is
> reasonably unaware that he has suffered an injury or, even though he
> is aware of the injury, that it was the fault of an identifiable person.
> See Caravaggio v. D'Agostini, 166 N.J. 237, 675 A.2d 182, 187
> (2001).  As set out by the New Jersey Supreme Court, the accrual of
> the claim will be postponed until the "injured party discovers, or by
> exercise of reasonable diligence and intelligence should have
> discovered[,] that he may have a basis for an actionable claim."
> Lopez v. Swyer, 62 N.J. 267, 300 A.2d 563, 565 (1973); see Lapka v.
> Porter Hayden Co., 162 N.J. 545, 745 A.2d 525, 530 (2000).

[Dique v. New Jersey State Police, 2010 WL 1793907, at * 2].

Although the statute of limitations is provided by New Jersey law, "the accrual date of a

§ 1983 cause of action is a question of federal law that is not resolved by reference to state law."

Wallace, 549 U.S. at 388 (emphasis in original).  For section 1983 claims, accrual occurs "when

the plaintiff has a complete and present cause of action -- in other words, when the plaintiff can

file suit and obtain relief."  Chen v. Twp. of Fairfield, No. 08-3635, 2009 U.S. App. LEXIS

26256 at *9 (quoting Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of

Cal., Inc., 522 U.S. 192, 201 (1997)) (internal quotations omitted); see also Dique v. New Jersey

State Police, 2010 WL 1793907, at * 3 ("[T]he tort cause of action accrues, and the statute of

limitations commences to run, when the wrongful act or omission results in damages.'") (quoting Wallace v. Kato, 549 U.S. 384, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007)).

Plaintiff alleges many facts occurring between 1993 and 2006 from which legal malice could arguably be inferred, including: (1) that he knew in 1993 that the documents that were the key evidence against him were forgeries, (Compl. ¶ 19); (2) that he knew in 1993 that the forger/star witness against him was a long-time friend of DAG Noto's family, (Compl. ¶ 20); (3) that he knew in 1993 that DAG Noto had notified the OAE of Plaintiff's indictment (Compl. ¶ 32); and (4) that he knew in September 2006 that the Attorney General's Office (after DAG Noto was removed as prosecutor in his case) had withheld exculpatory information, (Compl. ¶ 26). Clearly DAG Noto's 2009 arbitration testimony is not when Plaintiff first knew, or should have known, that DAG Noto potentially had legal malice. "Legal malice is defined as either knowingly acting without probable cause – i.e., a reasonable belief – or primarily for a purpose other than securing the proper adjudication of the claim in which the proceedings are based." Lightning Lube, 4 F.3d at 1197. Plaintiff has failed to allege facts showing that DAG Noto's 2009 arbitration testimony, and not any of the earlier events he alleges between 1992 and 2006, evidenced her legal malice.

First, because DAG Noto had first-hand knowledge of Plaintiff's indictment, for Plaintiff to plead the element of legal malice he must allege that DAG Noto acted "primarily for a purpose other than securing the proper adjudication of the claim in which the proceedings are based." Lightning Lube, 4 F.3d at 1197. Second, Plaintiff does not allege any facts that would allow this Court to hold that Plaintiff only first suspected legal malice was present no earlier than 2009. Plaintiff only alleges that in 2009 DAG Noto "denigrated Plaintiff, testifying that

she had been angry with [Plaintiff] as to the presentation of his defense in her failed prosecution more than twenty years earlier, and further admitted that she continued to be resentful towards him to this day." (Compl. ¶ 40). While it is debatable whether Plaintiff knew, or should have known, of the element of legal malice from the events that transpired between 1993 and 2006, see supra n. 17, Plaintiff clearly did not learn anything new in 2009 that was relevant to the question of whether DAG Noto had acted "primarily for a purpose other than securing the proper adjudication of the claim in which the proceedings are based." Lightning Lube, 4 F.3d at 1197. Finally, although not argued by Plaintiff, it is clear that Plaintiff has failed to allege facts which would support the tolling of the limitations period under the discovery rule. Clearly Plaintiff was well aware of DAG Noto's alleged conflict prior to her 2009 testimony.

Regardless of when between 1993 and 2006 Plaintiff should have suspected that DAG Noto acted with legal malice, Plaintiff's claim was not filed until October 1, 2009 and is therefore barred by the two-year statute of limitations. See Chen, 2009 U.S. App. LEXIS 26256 at *9.

### C.    Notice Under the NJTCA.

Defendants have moved for dismissal, with prejudice, of Plaintiff's tort claims against the State Defendants for failing to comply with the notice provisions of the NJTCA. (Def. Br. 15-17). Plaintiff argues that the NJTCA procedures are not applicable to state and federal civil rights claims or to acts committed by Noto outside the scope of her employment, (Pl. Br. 19), and that, due to extraordinary circumstances, Plaintiff is entitled to provide late notice if such claims are subject to the requirements of the NJTCA. (Pl. Br. 19-21).

i.      **The NJTCA.**

The NJTCA provides that, "[e]xcept as otherwise provided by the [NJTCA], a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."  N.J. Stat. Ann. § 59:2-1.  The NJTCA sets forth procedures that must be followed to bring tort claims against public entities, N.J. Stat. Ann. § 59:8-3, including a 90-day deadline to file a claim after the accrual of a cause of action for injury or damage to a person or property.  N.J. Stat. Ann. 59:8-8.  The NJTCA does provide that, "in the discretion of a judge of the Superior Court," a claimant who fails to meet the 90-day deadline may "be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby."  N.J. Stat. Ann. § 59:8-9.  However, in "no event may any suit against a public entity or a public employee arising under this act be filed later than two years from the time of the accrual of the claim."  N.J. Stat. Ann. § 59:8-9.

ii.      **NJTCA's Applicability to State and Federal Civil Rights Claims and Acts Committed by Noto Outside the Scope of her Employment.**

First, Plaintiff is correct that the NJTCA notice provisions are not applicable to his federal civil rights claims.  Garlanger v. Verbeke, 223 F. Supp. 2d 596, 601 n. 3 (D.N.J. 2002) (citing Fuchilla v. Layman, 109 N.J. 319, 330-31 (1988), cert. denied, University of Medicine & Dentistry v. Fuchilla, 488 U.S. 826 (1988)) ("The notice of claim provisions of the [NJ]TCA do not apply to federal civil rights claims brought under 42 U.S.C. § 1983.").  Plaintiff's federal civil rights claims appear to be pled only in Counts II and IV, which have been dismissed as barred by sovereign immunity and grievant/witness immunity.  See supra Sec. I & II.A; Hyatt v. County of Passaic, 340 Fed. Appx. 833, 837 (3d Cir. 2009) (citing N.J. Stat. Ann.  59:2-2(a))

("The [NJ]TCA, which allows suits against public entities and their employees in state courts, does not expressly consent to suit in federal courts and thus is not an Eleventh Amendment waiver.").  Similarly, this Court need not consider the applicability of the NJTCA's notice provisions to Counts II and IV, insofar as they are state civil rights claims, but do not seek relief under the NJCRA, because they are also dismissed as barred by sovereign immunity and grievant/witness immunity.  See supra Sec. I & II.A.

Second, Counts I, III, and V (insofar as they are state tort claims) are clearly subject to the NJTCA's procedural requirements as tort claims against public entities; equally clear is that Plaintiff has not complied with those requirements.  Plaintiff cites Owens v. Feigin, 194 N.J. 607, 611 (2008) to support his argument that, by arguing his claims failed to comply with NJTCA's notice provision, Defendants implicitly acknowledge that Plaintiff's state and federal civil rights claims are not subject to NJTCA procedures.  (Pl. Br. 19).

Ignoring Plaintiff's deeply flawed logic, this Court notes that the holding in Owens – that actions brought pursuant to the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-2 (2010) ("NJCRA"), need not comply with the NJTCA's notice-of-claim requirement – has limited applicability to this case.  194 N.J. at 614; see generally Slinger v. New Jersey, No. 07-CV-5561, 2008 U.S. Dist. LEXIS 71723, *14-22 (D.N.J. Sept. 4, 2008), overruled in part on other grounds, 2010 U.S. App. LEXIS 3642 (discussing the NJCRA).  Only Counts II and IV of the Complaint seem to implicate Plaintiff's "civil rights."  (Compl. ¶¶ 47-52, 58-62).  Plaintiff's tort claims (Counts I, III, and V) are clearly all subject to the notice provisions of the NJTCA. Further, nowhere in the Complaint is the NJCRA cited by Plaintiff as a basis for any of his causes of action.  See Slinger, 2008 U.S. Dist. LEXIS 103317 at *5-6 (citing Freedman v. City

25

of Allentown, Pa., 853 F.2d 1111, 1114 (3d Cir. 1988)) ("It is within the Court's discretion . . . to determine the sufficiency of a civil rights pleading.").

Finally, all counts of the Complaint, as they relate to Noto's actions taken outside the scope of her employment, are dismissed as the Complaint does not allege how Noto acted outside the scope of her employment regarding Plaintiff's criminal and NJOAE proceedings. Regarding any actions Noto performed outside the scope of her employment, Plaintiff is correct that N.J. Stat. Ann. 59:3-14 provides that "[n]othing in this act [the NJTCA] shall exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct." See also Fielder v. Stonack, 141 N.J. 101, 123 (1995).  Although Plaintiff argues in his brief that Noto was acting outside of her employment when she "help[ed] her family friend avoid prosecution," (Pl. Br. 19), nowhere in the Complaint does Plaintiff allege that Noto did anything to help her unnamed family friend avoid prosecution.  Further, as discussed above, all of Noto's actions alleged in the Complaint (outside of testifying at the 2009 arbitration) were either performed in her capacity as a prosecutor or as a witness/grievant before the NJOAE and, as such, are deserving of immunity.  See supra Sec. II.A.

### iii.    NJTCA Late Notice and Extraordinary Circumstances.

Even assuming that Plaintiff is correct that the NJTCA notice requirements do not apply to his "civil rights" claims; Counts I, III, and V (Plaintiff's tort claims) still must comply with the NJTCA's notice provisions.  The NJTCA provides a 90-day deadline to file a claim after the accrual of a cause of action for injury or damage to a person or property.  N.J. Stat. Ann. 59:8-8. A cause of action "accrues" when the tort is committed.  Torres v. Jersey City Med. Ctr., 356

26

A.2d 75, 77 (N.J. Super. Law Div. 1976); N.J. Stat. Ann. § 59:8-1.  As discussed above, if the

torts of Count I, III, and V accrued at all, they did so – at latest – by September 2006; not in

2009.  See supra Sec. II.B.iii.  As a result, even if Plaintiff's reasons for extension were

sufficient to sway this Court's discretion, the Court could not exercise it because NJTCA

provides that in "no event may any suit against a public entity or a public employee arising

under this act be filed later than two years from the time of the accrual of the claim."  N.J. Stat.

§ 59:8-9.  Because more than two years have passed since any accrual, theoretical or otherwise,

of Counts I, III, and V, Defendants are not, as a matter of law, liable for any injury to Plaintiff

on those Counts.  As such, Counts I, III, and V are dismissed for failing to comply with the

NJTCA procedural requirements.

## CONCLUSION

For the reasons stated above, Defendant's Motion is GRANTED and Plaintiff's

Complaint is DISMISSED with prejudice.

Date: May 28, 2010

_____/s/ Freda L. Wolfson_____
FREDA L. WOLFSON, U.S.D.J.

27